STATE *EX REL.* McGAHAN v. MORRIS.

1. CHARLESTON SANITARY AND DRAINAGE COMMISSION—COUNTY BOARD OF COMMISSIONERS—MANDAMUS.—It is the duty of the auditing committee of the board of county commissioners of Charleston County to audit the accounts of the Charleston Sanitary and Drainage Committee, and mandamus is the proper remedy to compel the

committee to perform the ministerial duty of passing on the claims, but the Court cannot compel it thereby to approve or reject a claim.
2. CONSTITUTION.—Respondents in mandamus cannot raise the question of the unconstitutionality of an act on which they partly rely.

Petition in the original jurisdiction of this Court by T. R. McGahan and others, as members of the sanitary and drainage committee of Charleston County, against R. J. Morris *et al.,* as the auditing committee of the board of county commissioners of that county. The petition is as follows:

"1st. That by virtue of an act approved the 19th day of February, 1900, of the General Assembly of the State of South Carolina, entitled 'An act to create a sanitary and drainange commission for Charleston County,' passed at the regular session of the General Assembly of 1900, T. R. McGahan, W. H. Welsh, W. B. Wilson, A. F. C. Cramer, George A. Wagener, and their successors in office, of the county of Charleston, were created a commission by the name and style of The Sanitary and Drainage Commission of Chareston County. That in and by section two of said act, it was provided that the term of office of the above named commission will be until the 1st of January, 1903; their successors to be elected at the general election of November, 1902, to serve for four years from January 1st, 1903. The said commissioners shall serve without compensation.

"2d. That at the general election held in this State on the 4th day of November, 1902, T. R. McGahan, W. H. Welsh, G. A. Wagener, A. T. Tobias and A. F. C. Cramer were duly elected as successors in office to the commission created as aforesaid and qualified as such, and are now, and at the time hereinafter mentioned were, a commission by the name and style of The Sanitary and Drainage Commission of Charleston County.

"3d. That by an act of the General Assembly of South Carolina, approved the 20th day of February, 1901, entitled 'An act relating to drainage, public canals and ditches in Charleston County,' was provided in section two thereof, that the control and management of said drainage, public

canals and ditches was hereby vested in the sanitary and drainage commissioners of said county, and they were empowered to regulate and control the manner of connecting therewith upon the part of persons owning lands adjoining thereto or through which the canal may run, by trunks, culverts, or other means in such territory in which the said commission may establish a system of drainage.

"4th. That by an act of the General Assembly of South Carolina, approved the 6th day of February, 1903, entitled 'An act to amend an act entitled an act relating to drainage, public canals and ditches in Charleston County, approved February 20th, 1901, so as to amend sections three and four, and by adding another section to be known as section five, and in changing the numbers in said section in conformity therewith,' the said act of February 20th, 1901, was amended in conformity with the title of said amendatory act.

"5th. That at a regular meeting of the county board of commissioners of Charleston County duly organized according to law, held on the 1st day of April, 1903, the above named respondents, R. J. Morris, F. W. Cappelmann, T. J. Price, R. M. Anderson and D. B. Gilliland were duly elected by said county board of commissioners as auditing committee of said board, and were at the time hereinafter mentioned, and now are, the auditing committee of the county board of commissioners of Charleston County, and W. P. Cantwell, supervisor of Charleston County, claims to be *ex officio* member of said auditing committee.

"6th. That by an act of the General Assembly of South Carolina, approved 20th day of February, 1903, entitled 'An act to raise supplies and make appropriations for the fiscal year commencing January 1st, 1903,' there was appropriated the sum of ten thousand eight hundred and fifty-eight dollars and thirty-one cents, if so much be necessary, for The Sanitary and Drainage Commission of Charleston County, to be paid by the treasurer of Charleston County to the said secretary of said Sanitary and Drainage Commission of Charleston County, who shall execute and file a bond for said amount

with two or more sureties to the county of Charleston for the faithful performance of the duties devolved upon him by said commission; said amount to be used and disbursed for the purposes for which said commission was created, and to be accounted for by said commission; said sum not to be in addition to the sum hitherto appropriated for said commission. The amount appropriated for the sanitary and drainage commission shall be paid by the county treasurer to the secretary of said commission as the same shall be required by him, upon a voucher signed by the secretary of said commission, after bills for such expenditures, sworn to by said secretary, have been audited by the auditing committee of said county board of commissioners.

"7th. That the secretary of said sanitary and drainage commission of said Charleston County duly executed and filed his bond for said amount appropriated to the county of Charleston as required by said act.

"8th. That at a meeting of the said auditing committee of the county board of commissioners of Charleston County, State aforesaid, held on the        day of April, 1903, the said Charleston Sanitary and Drainage Commission presented bills for expenditures made and incurred by said commission, for the purposes for which said commission was created, duly sworn to by the secretary of said commission for auditing by said auditing committee of the county board of commissioners of Charleston County, State aforesaid, and thereupon said auditing committee as aforesaid refused to audit bills for such expenditures, and addressed the following communication to Mr. T. R. McGahan, chairman of Sanitary and Drainage Commission of Charleston County: 'Office of County Supervisor, Charleston, S. C., April 20, 1903. Mr. T. R. McGahan, Chairman of Sanitary and Drainage Commission of Charleston County, Charleston, S. C. Dear Sir: The auditing committee passed the following resolution: Resolved, That the auditing committee of the county board of commissioners for Charleston County beg to notify the sanitary and drainage commission, that under the advice of

their counsel, they have no legal authority to audit the bills of the commission. Respectfully, W. P. Cantwell, supervisor and *ex officio* member of auditing committee.'

"9th. That the work of the said sanitary and drainage commission of Charleston County must be suspended by reason of the refusal of the respondents, as said auditing committee of the county board of commissioners of Charleston County to audit their accounts, as required by the act of the General Assembly of South Carolina hereinbefore referred to, and that your petitioners have no adequate remedy for the wrongful refusal of the said auditing committee of the county board of commissioners of Charleston County, than the writ of mandamus to compel them to perform their legal duty in the premises.

"Wherefore, your petitioners asking the aid of this honorable Court, pray that a writ of mandamus be issued, directed to said auditing committee of the county board of commissioners of Charleston County, State aforesaid, commanding them, and each of them, to proceed to audit said vouchers of the secretary of the said Charleston Sanitary and Drainage Commission of Charleston County, as required by law, and such other relief as they may be entitled to in the premises."

The respondents filed the following return to the petition under the rule to show cause:

"First. They deny each and every allegation contained in the petition not hereinafter admitted.

"Second. They admit so much of paragraph one as alleges that on the 19th day of February, 1901, the General Assembly of the State of South Carolina passed an act to create a sanitary and drainage commission for Charleston County, and that the facts as stated in paragraph one are true according to the said act, but that the petition does not set out the powers and duties, and various other matters as contained in the act referred to, which will be hereinafter referred to, for the purpose of showing what powers and duties were given

to the said sanitary and drainage commission for Charleston County.

"Third. They admit so much of paragraph two as alleges the election of certain parties therein named, but deny so much of said paragraph as shows that they are now a lawful commission under the name and style of 'Sanitary and Drainage Commission of Charleston County.'

"Fourth. These respondents admit so much of paragraph three of the petition as shows that an act of the General Assembly of South Carolina was approved on the 20th day of February, 1901, entitled 'An act relating to the drainage, public canals and ditches in Charleston County,' and admit the allegation therein contained, but allege that by reference to the above entitled act of the 20th day of February, 1901, as will be shown hereafter, that these petitioners have not shown to the Court in their petition what powers and duties were delegated to them, and what powers and duties were delegated to the county of Charleston, and what powers and duties they were not allowed to perform.

"Fifth. These respondents admit that there was an act of the General Assembly of South Carolina, approved the 6th day of February, 1903, as set out in paragraph four, and the allegations therein contain, but allege that the petitioners have not shown to the Court, in said paragraph, what were the real duties and powers given to the said sanitary and drainage commission of Charleston County in the act amending the act as above referred to, which powers and duties will be hereafter referred to as a part of this return.

"Sixth. These respondents admit the allegations contained in paragraphs five, six and eight of said petition.

"Seventh. These respondents deny the allegations contained in paragraph seven, showing that any bond has been properly executed and filed by the secretary of said drainage commission to the county of Charleston, and allege that no bond has been submitted to the county board of commissioners for approval, as required by law.

"Eighth. They deny the allegations contained in para-

graph nine that work of the commission must be suspended by the refusal of the auditing committee to audit their accounts, and allege, as will be more fully shown in this return, that if they have any powers whatsoever, under the statutes above referred to, that the powers therein contained may be exercised without any bills passing through the auditing committee or the county board of commissioners for Charleston County.

"These respondents, for a further and second section of the answer and return, allege:

"First. That they each and all are members of the county board of commissioners for the county of Charleston, State of South Carolina, and as such members of the county board of commissioners for the county of Charleston were elected the auditing committee of the said county board of commissioners for the purpose solely and only of passing upon 'all claims and demands of every kind whatsoever against the said county, excepting such salaries and county treasurer's notes, and the certificates or tickets of witnesses, jurors and constables,' and that their duties as members of the board of county commissioners can only be such as are provided for by the statutes of the State of South Carolina, when acting as commissioners, in regard to all such claims and demands against the said county of Charleston, as may be true and lawful claims, and if reference will be had to the act to raise supplies and State appropriations for the fiscal year commencing January first, 1903, and similar acts passed in previous years, since the said county board of commissioners have been in existence in the county of Charleston, their duty is specified in language following: 'All claims and demands of every kind whatsoever against the said county, excepting such salaries and county treasurer's notes, and the certificates or tickets of witnesses, jurors and constables, shall be itemized before they can be audited by a committee of five, now and heretofore existing, and their successors, or a majority thereof, and (if approved) shall thereupon be certified and signed by said committee, or a majority thereof, and by the

clerk and secretary of the county board of commissioners, and no such claims or demands shall be paid unless first audited and approved by said committee, or a majority thereof, and also approved by said county board of commissioners, and also certified and signed by said committee, or a majority thereof, and by the clerk or secretary of the said board, as aforesaid.'

"Second. That as such commissioners and auditing committee of the county board of commissioners of Charleston County, they can only audit and approve the lawful and legal claims against the county, and when a claim is presented to them which is not a lawful claim or demand against the county of Charleston, they have no legal authority to audit any such bill, claim or demand.

"That for a further and third section of the answer and return, they allege:

"Third. That these respondents are members of the county board of commissioners of Charleston County, and as the auditing committee of said county board of commissioners above referred to, they have no legal authority to audit the bills of the so-called sanitary and drainage commission of Charleston County.. For the further additional reasons, that the members of the sanitary and drainage commission for Charleston County are not a legal body for the purpose of transacting business under the laws and Constitution of the State of South Carolina, for the reason that the so-called sanitary and drainage commission for Charleston County is composed of a body of men acting under certain special acts of the legislature, contra to the Constitution of the State, which are not acts amending the general law of the State of South Carolina, making the county board of commissioners of the several counties in this State the commissioners of health and drainage, who shall have jurisdiction over the streams, swamps and bottom lands in their special counties, as approved in the year 1900, vol. 23d of the General Statutes, page 98, and subsequently adopted in the

Code of Laws of South Carolina, volume 1, article II., page 553, as the general law of the State.

"That for a further and fourth section of the answer and return, these respondents allege:

"Fourth. That if the so-called sanitary and drainage commission for the county of Charleston has any powers or existence whatsoever, under the laws of the State of South Carolina, it being a special commission formed for the purpose of doing special work within special territory, then it is confined to whatever interests, powers and duties are given to it, under the acts approved the 19th day of February, 1900, page 513, of the twenty-third Statutes of the State of South Carolina, and the acts amending the same, approved the 20th day of February, 1901, and the acts approved the 6th day of February, 1903, and such other and only acts of the legislature of the State of South Carolina as amended the original act creating the so-called sanitary and drainage commission for Charleston County; and if reference is had to the said acts above referred to, this honorable Court will find therein fully enumerated the various duties and powers of the said commission, and amongst other provisions therein provided for in said acts, it is provided in the year 1901, section 1: 'That from and after the passage of this Act, the county of Charleston shall have a right of way in and to all the drainage canals, public drains and ditches in said county, outside of the corporate limits of the city of Charleston, now used, or which may hereafter be acquired and used, for public drainage and sanitary purposes.' And in section 2, providing that the control, etc., shall be vested in the sanitary and drainage commission of said county, it is also provided: 'But said commission shall not have authority to expend any money derived from taxation for the purpose of a right of way or other interests in lands for such canals, drains or ditches.'

"Fifth. It is also provided in other sections of the act of 1901, above referred to, and the acts of 1903 amending the said act, that the persons or corporations whose lands, drains

11—67

and ditches have been dug by the owners thereof, connected with the drainage canals, public drains or ditches, are required to keep the same open and in good order; and in case the lands are in unsanitary condition and require drainage, shall be required to dig and open drains and ditches, etc., to connect with drainage canals, etc., of the said county, and that in case the owners or agents do not have the necessary work done, 'All expenses and charges paid and incurred by said commissioners shall and may be recovered, with interest and costs of suit, in an action of debt to be brought by said sanitary and drainage commission in the Court of Common Pleas for Charleston County, against the owner or owners of such lands and grounds: *Provided,* Such expenses and charges do not exceed more than one-half of the value of said lands and grounds.' And the Constitution of South Carolina has provided by an amendment thereto, adopted in the year 1901, that 'The General Assembly shall provide for the condemnation, through proper official channels, of all lands necessary for the proper drainage of swamp and low lands of this State, and shall also provide for the equitable assessment of all lands so drained, for the purpose of paying the expenses of such condemnation and drainage.' That under the acts above referred to and the constitutional provision of the State of South Carolina, as adopted in the year 1901, no act of the General Assembly has been passed providing for the equitable assessment of all lands so drained, for the purpose of paying the expenses of such condemnation and drainage. And this auditing committee of the county board of commissioners for Charleston County have no legal authority to audit any bills of the sanitary and drainage commission presented to them, for the reason above set forth.

"That for a further and fifth section of the answer and return, they allege:

"Sixth. That as county commissioners and the auditing committee of the county board of commissioners of Charleston County, their duties are confined to passing upon such claims and demands as are against the county of Charleston,

and which said claims and demands are to be paid out of the taxes levied under the law of the State of South Carolina for county purposes, and they find that the Constitution of the State of South Carolina distinctly provides in article X., section 6, that 'The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose, excepting for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, county officers, and for litigation, quarantine and Court expenses, for ordinary county purposes, to support paupers, and pay past indebtedness.' And that they have no legal authority to audit the bills of the sanitary and drainage commission for the reason that it has previously used, and is now attempting to use, the taxes and public funds of the county of Charleston in the drainage of private property and acquiring of an interest in the lands of private parties or corporations, which said drainage and acquiring of an interest in the lands of private parties or corporations is the unlawful application of the taxes, and the unlawful improvement of the lands of private persons or corporations with public money or taxes.

"Seventh. That as this committee is requested to audit bills for the payment of the taxes of the county of Charleston for special work done by a special board, when no fund has been raised by the assessment of the lands so drained, this committee cannot audit the bill, for the reason that there are no funds applicable to the payment of the said bills.

"These respondents, for a further and sixth section of the answer and return, allege:

"Eighth. That if reference will be had to the acts to raise supplies and make appropriations for the fiscal years of 1900, 1901, 1902 and 1903, this honorable Court will find that the annual appropriations are therein set out, and in 1900 the sum of two thousand dollars was appropriated; in 1901 the sum of four thousand dollars was appropriated, not to be used until two thousand dollars should have been paid to the treasurer of Charleston County from other sources; and in

1902 the sum of eight thousand dollars was appropriated, 'said sum to be in place of and not in addition to the sum hitherto appropriated for said commission;' and in the year 1903 the amount appropriated was the sum of ten thousand eight hundred and fifty-eight and 31-100 dollars; 'said sum not to be in addition to the sum hitherto appropriated for said commission;' and this auditing board being the new auditing board of the new board of county commissioners for 1903, when the bills for expenditures were presented to them, on the      day of April, 1903, could not pass upon the accounts, as to whether the fund had been exhausted or not, and there was nothing in the bills of expenditures presented to them showing that the full amount had not been exhausted, or the application of the taxes of the citizens of the county of Charleston to a proper and lawful purpose.

"These respondents, for a further and seventh section of the answer and return, respectfully submit:

"Ninth. That this Court has no jurisdiction under its original power to issue a writ of mandamus, for the reason that they are commissioners of the county of Charleston, and as such commissioners an auditing committee of the said county, for the purpose of passing upon such claims as may be presented to the committee affecting the county of Charleston; and if this committee rejected the bill or claim for any manner or reason whatsoever, the relators would be required, under the practice in this State, to appeal from the ruling of the committee or commissioners to the Court of Common Pleas.

"Wherefore, your respondents pray that the writ of mandamus be not issued, and that they be entitled to such other and further relief as may be granted, in the discretion of this honorable Court."

*Messrs. Nathans & Sinkler,* for petitioners, cite: *Right of General Assembly to endow commission arises from police power:* Con., art. VIII., sec. 10; Cr. Code, 1902, 334. *General Assembly had right to levy tax for its use:* Con., art.

VIII., sec. 10; act 1901, 660. *Mandamus is relators' only remedy:* 21 S. C., 362; 13 S. C., 266.

*Mr. W. M. Fitch,* contra, cites: *Supply act cannot change law as to duties of county commissioners:* 7 Ency., 2 ed., 1004, 5, 6, 7. *Mandamus will not lie to compel performance of act not prescribed by law:* 39 S. E. R., 425; 46 Col., 171; 59 N. Y., 620; 26 Ark., 454. *The act creating commission violates Constitution:* Code, 1902, 1471; 39 S. E. R., 381; 59 S. C., 110; 54 S. C., 261; 62 S. C., 247; 42 S. E. R., 997; 41 S. E. R., 893; 29 S. E. R., 89. *This Court has no power to compel commission to audit the account:* 24 S. C., 543; 30 S. C., 519; 31 S. E. R., 61; 7 Encv., 2 ed., 1003, 1009; 26 S. E. R., 281.

July 15, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an application to the Supreme Court, in the exercise of its original jurisdiction, for a writ of mandamus, commanding the auditing committee of the county board of commissioners for Charleston County to audit the vouchers of the secretary of the Charleston Sanitary and Drainage Commission. The petition and the return to the rule to show cause, will be set out in the report of the case. The petitioners demurred to the return on the ground that it did not state facts sufficient to prevent them from obtaining relief to which the petition showed they were entitled.

We will first inquire whether it is made the duty of the auditing committee of said board to audit such claims. Turning to the act entitled "An act to raise supplies and make appropriations for the fiscal year commencing January the first, 1903, approved 21st February, 1903, 24 St., 133, we find the following provisions as to Charleston County: "All claims and demands against said county, excepting the salaries of the officers of said county and the county treasurer's note or notes, or other similar evidence or evidences of indebtedness (including in-

terest thereon), shall be paid upon the warrant of the county
supervisor of said county, as hereinbelow provided. The
salaries of the officers of said county shall be paid by the
county treasurer monthly, upon the receipt of such officers.
The amount appropriated for the sanitary and drainage com-
mission shall be paid by the county treasurer to the secretary
of said commission, as the same shall be required by him,
upon a voucher signed by the secretary of said commission,
after the bills for such expenditures, sworn to by the said
secretary, have been audited by the auditing committee of
the county board of commissioners. The original or dupli-
cate receipts for all payments made by said county treasurer,
excepting payments upon said notes or other similar evi-
dences of indebtedness, and upon the warrant of said county
supervisor, shall be filed by said county treasurer with the
said county supervisor. All claims and demands of every
kind whatsoever against the said county, excepting such
salaries and county treasurer's notes, and the certificates or
tickets of witnesses and jurors and constables, shall be item-
ized before they can be audited, and when so itemized shall
be first audited by a committee of five, now and heretofore
existing, and their successors, or a majority thereof, and (if
approved) shall thereupon be certified and signed by said
committee, or a majority thereof, and by the clerk or secre-
tary of the county board of commissioners; and no such
claims or demands shall be paid unless first audited and ap-
proved by said committee, or a majority thereof, and also
approved by said county board of commissioners, and also
certified and signed by said committee, or a majority thereof,
and by the clerk or secretary of said board, as aforesaid (ex-
cept amounts expended by the said sanitary and drainage
commission, which shall be paid by the said county treasurer
upon accounts and vouchers sworn to by the secretary of said
commission as herein provided for)." It will be observed
that provision is made for the payment of three classes of
claims: (1) Salaries of officers and county treasurer's notes
or other similar evidences of indebtedness: (2) bills for ex-

penditures made by the sanitary and drainage commission, and (3) all other claims of every kind soever, against the county. Those embraced in the second class are required to be audited by the auditing committee of the board of county commissioners.

In the 4 Cyc. of Law & Pro., 1055-7, the word "audit" is thus defined: "To examine; to pass upon; to hear and examine; to pass upon and adjust; to examine and adjust an account; to examine, settle and adjust accounts—to verify the accuracy of the statement submitted to the auditing officer or body; to hear, examine, adjust, pass upon and settle an account, and then allow it; to hear, and upon the hearing to adjust, or to allow, or to reject, or otherwise decide according to the nature of the claim; the examination and allowance of accounts." In the note it is stated, that "in its broader sense it includes its adjustment or allowance, disallowance or rejection." It is thus defined in 3 Enc. of Law, 513: "Audit means to hear and examine; to pass upon and to adjust; to examine and adjust an account or accounts." In the note it is said: "The word implies an exercise of judicial discretion." Also, "To audit means to hear, examine, adjust, pass upon and settle the account, and then allow it. It matters not whether the duty was difficult or easy; in its nature it required the exercise of judgment, and that is enough."

The duty of the auditing committee is both ministerial and judicial—it is ministerial, in so far as the hearing and examination of the claim is involved, and judicial, in determining whether it shall be approved or rejected. Mandamus is the appropriate remedy to require the auditing committee to take action upon the claim, but not to interfere with the discretion of the committee in approving or rejecting the claim as it may see fit.

The respondents have set forth in their return certain objections which might properly be urged upon the auditing committee to *reject* the claim, but are not available to prevent the committee from *examining* it. The authorities

2      in this State show that the respondents have not the
        right to raise the question as to the constitutionality
of said act.   *Moore* v. *Napier,* 64 S. C., 564, and cases
therein cited.

The writ has already been issued, commanding the audit-
ing committee to audit the claim, in so far as their ministerial
duties were involved, but this Court did not, and cannot,
undertake to say, in this proceeding, whether it should be
approved or disallowed.

Mr. Chief Justice Pope *concurs in the result.*